UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

```
TONYA GOLDEN,                      )
on behalf of herself and all       )
others similarly situated,         )
                                   )
        Plaintiff,                 )
                                   )
vs.                                )   Civil Action No. CV-98-S-2565-NE
                                   )
CREDIT BUREAU OF HUNTSVILLE        )
and HOLLOWAY CREDIT BUREAU         )
COMPANIES,                         )
                                   )
        Defendants.                )
```

FILED
99 NOV -3 PM 2:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
NOV - 3 1999

MEMORANDUM OPINION

This action is before the court on plaintiff's motion for an award of costs and attorney fees. Upon review of the motion and briefs submitted by both parties, this court finds that plaintiff's motion is due to be granted in part and denied in part.

I. FACTUAL BACKGROUND

Plaintiff commenced this action against defendants on October 8, 1998, alleging that defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.[1] The parties jointly petitioned the court for class certification and settlement of plaintiff's claims on August 3, 1999. The court initially denied that motion, but, upon reconsideration, certified the class

---

[1] Specifically, plaintiff alleged defendants violated 15 U.S.C. § 1692g(a)(4), by "contradicting" and "overshadowing" a thirty-day validation period regarding the collection of a debt, and 15 U.S.C. § 1692e(10), by using "false" or "deceptive" means to collect a debt.

action and approved the class settlement pursuant to Federal Rule of Civil Procedure 23(e).

As part of the settlement, plaintiff received statutory damages in the amount of $1,000, along with an additional $1,000 for her services as class representative. Further, defendants agreed to pay $1,500 in the form of a *cy pres* award to Legal Services of North-Central Alabama, Inc. Plaintiff's recovery reached the limits of what is available under the FDCPA.[2] In the settlement agreement, plaintiff reserved the right to apply to this court for an award of costs and reasonable attorneys' fees. The application for costs and fees, along with defendants' response, is discussed below.

---

[2] 15 U.S.C. § 1692k(a) discusses the amount of damages available in a FDCPA action:

> Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
>
> (1) any actual damages sustained by such person as a result of such failure;
>
> (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or
>
> (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector ....

2

## II. PLAINTIFF'S MOTION

Both parties note that the FDCPA directs a court to award costs and "reasonable" attorneys' fees "in the case of any successful action to enforce" an individual's rights under that act. 15 U.S.C. § 1692k(a)(3); *see also Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995) (noting that "statutory language makes an award of fees mandatory"). Both parties agree that this court should compute a reasonable attorneys' fee according to the "lodestar" analysis, articulated by the United States Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983):

> The most useful starting point for determining the amount of a reasonable fee is the <u>number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate</u>. The calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.

*Id.* at 433, 103 S.Ct. at 1939 (emphasis supplied).

Plaintiff submits detailed billing records from three attorneys who worked on her case: A. DeLoach Stewart, who practices in Florence, Alabama; O. Randolph Bragg, who practices in Chicago, Illinois; and Jeffery Benjamin, an associate in Bragg's firm in Chicago. The total request of fees from these three attorneys is $23,904.75. The fees break down in the following manner:

3

| Attorney | Rate | Hours | Total Fee |
|----------|------|-------|-----------|
| Stewart | $135/hr. | 44.35[3] | $5,987.25 |
| Bragg | $275/hr. | 57.9 | $15,922.50 |
| Benjamin | $150/hr. | 13.3 | $1,995.00 |

In addition, Stewart requests costs in the amount of $224.27, and Bragg requests costs in the amount of $1,950.67.

Defendants assert that three components of plaintiff's calculation of attorneys' fees are unreasonable, and should be reduced: Bragg's claimed hourly rate ($275); the number of hours expended by Bragg (57.9); and the number of hours claimed by Stewart (44.35).

Defendants argue that the reasonable hourly rate figuring into the "lodestar" analysis is based on the "prevailing market rate in the relevant legal community." *Blum v. Stenson*, 465 U.S. 886, 896 n.11, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984).[4] To illustrate this prevailing rate in the Northeastern Division of the Northern District of Alabama, where this action was filed, defendants submit the affidavit of Huntsville attorney George Royer. Royer, who has

---

[3] Stewart actually spent 52.65 hours on this case. However, he deducted 8.3 hours from his request for fees. (Plaintiff's motion for an award of costs and attorney fees, Appendix "A," at ¶ 7.)

[4] A court calculates a reasonable hourly rate by analyzing "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citations omitted). This rate is a question of fact for the court, and is subject to review under the "clearly erroneous" standard. *See Brooks v. Georgia State Board Of Elections*, 997 F.2d 857, 868 (11th Cir. 1993).

4

practiced law since 1972, states that the "prevailing market rate" for services rendered by individuals like Bragg in a case of this nature is from $175 to $185 an hour.

Defendants further label this case as "routine" under the FDCPA, and accordingly question how Bragg could reasonably expend 57.9 hours[5] on it, given his experience and expertise in this area of the law.[6] Defendants pinpoint similarities in this action with cases previously litigated by Bragg to show that the time spent by Bragg, as set forth in his billing records, is unreasonable. Further, defendants note the disparity in plaintiff's total recovery ($3,500.00) with the time spent by Bragg. Defendants request this court to lower Bragg and his associate's total hours to thirty.

Defendants also ask this court to lower Stewart's total hours to 25. Defendants indicate that Stewart's experience in handling prior FDCPA cases, along with plaintiff's own experience as a litigant, justify cutting Stewart's total hours almost in half.

In sum, defendants ask the court to assess a total attorneys'

---

[5] Defendants challenge the hours spent by Benjamin as well, questioning how Bragg's firm could spend 71.2 hours total in preparation of this case.

[6] Bragg's declaration reveals that he has litigated numerous consumer cases, authored or co-authored several writings on the FDCPA, including a treatise, and lectured to a number of professional groups on consumer law issues. (Plaintiff's motion for an award of costs and attorney fees, Appendix "B," at ¶¶ 4-6.)

5

fee of $8,925.00, which is itemized below:

| Attorney | Rate | Hours | Total Fee |
|---|---|---|---|
| Stewart | $135/hr. | 25.0 | $3,375.00 |
| Bragg[7] | $185/hr. | 30.0 | $5,550.00 |

Plaintiff acknowledges that billing rates typically should reflect the "prevailing market rate in the legal community." Even so, according to plaintiff, the range of hourly fees identified by Royer in his affidavit do not apply to this case. Plaintiff argues for the higher, non-local rate submitted by Bragg, since Stewart could not pinpoint counsel in Huntsville to handle a class action under the FDCPA. Stewart declares:

> I was unaware of and unable to locate counsel in the Northern District of Alabama experienced in handling FDCPA class action litigation on behalf of consumers. I searched the Martindale-Hubbell Directory. I found no listing for an attorney in the Northern District of Alabama, much less one in Huntsville, listing the FDCPA as an area of practice. I found no listing in [sic] for an attorney in Huntsville listing consumer law or consumer protection as an area of practice. I found no listing for an attorney in Huntsville listing class action litigation as an area of practice. I also consulted the National Association of Consumer Advocates Member Directory. I found no listing in that directory for an attorney in Huntsville handling either FDCPA claims or class action litigation on behalf of consumers. My efforts did not reveal any attorneys in Huntsville, Alabama experienced in handling FDCPA class action claims on behalf of consumers. ... I concluded there were no

---

[7] Defendants seek to reduce the 71.2 hours expended by Bragg <u>and his associate</u>, Benjamin, to 30 hours. The court applies the maximum billing rate prescribed by Royer in his affidavit to these 30 hours.

> local attorneys with expertise in FDCPA class action
> litigation willing and able to represent a class of
> consumers, and I contacted Mr. Bragg concerning this
> claim.

(Reply brief in support of plaintiff's motion for an award of costs and attorney fees, Appendix "A," at ¶ 4.) Plaintiff relies on the recent Eleventh Circuit case of *ACLU of Georgia v. Barnes*, 168 F.3d 423 (11th Cir. 1999), for the proposition that non-local rates are justified if no attorneys practicing in the relevant market area are willing and able to handle plaintiff's claims. *See id.* at 437.

Plaintiff further contends Stewart's other cases dealing in consumer protection were taken on a *pro bono* basis. Finally, plaintiff argues her prior litigation experience has nothing to do with her ability to recover attorneys' fees in the present action, particularly since the FDCPA is designed to protect all consumers. Defendants failed to respond to the arguments set forth by plaintiff in her reply brief.[9]

### III. DISCUSSION

A. **Applicability of Non-Local Rates to a FDCPA Class Action**

As pointed out by plaintiff, resolution of the issue of

---

[9] To ensure each party a fair opportunity to make all relevant arguments on the issue of attorneys' fees, the court directed defendants to respond to the claims made in plaintiff's reply brief by October 20, 1999. (*See* order of Oct. 6, 1999.) Defendants did not respond by October 20th, and this court has not received any submission from defendants since that date.

7

Bragg's reasonable hourly rate falls squarely within the Eleventh Circuit's decision in *ACLU of Georgia v. Barnes*, 168 F.3d 423 (11th Cir. 1999). The *Barnes* court reversed the trial court's decision to award "New York rates" to attorneys who prevailed in a case in Atlanta.[9] *See id.* at 436. The two New York attorneys were not entitled to non-local rates, because "there were Atlanta attorneys who could have handled this case." *Id.* Evidence relied upon by the court in reaching that conclusion included the "affidavit of an Atlanta attorney stating that he was aware of Atlanta attorneys who could have handled this case and that the affidavits of [opposing counsel] suggesting there were no such attorneys were incorrect." *Id.*

Defendants submitted no evidence controverting the declaration of Stewart, which states that no attorney in the relevant market area was willing, able, and competent to handle plaintiff's class action.[10] Stewart's affidavit alone, however, is not enough for plaintiff to prove that non-local rates should apply to Bragg's (and Benjamin's) efforts in pursuing this class action.

---

[9] The two New York-based attorneys requested $350 and $260 per hour, respectively. The three Atlanta-based attorneys working as co-counsel requested between $165 and $185 per hour. *See id.* at 436.

[10] George Royer's statement that he has "litigated a Fair Debt Collection Practices Act" case in the past, without further elaboration, does not aid the court in its analysis.

The Eleventh Circuit has stated that "[s]atisfactory evidence [that the requested rate is in line with prevailing market rates] <u>at a minimum is more than the affidavit of the attorney performing the work</u>." *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1998) (emphasis supplied). By analogy, a plaintiff requesting attorneys' fees at non-local rates must submit an affidavit from someone other than an attorney directly involved in the action to show that no local lawyers were available. *See Barnes*, 168 F.3d at 436 (relying extensively on the affidavit of an attorney not affiliated with the case). Plaintiff's failure to submit any evidence beyond the declaration of Stewart does not satisfy the evidentiary requirements of *Norman* and *Barnes*.

Further, the court disagrees with certain assertions and presumptions made by Stewart in his affidavit. A review of *West's Legal Directory* indicates that at least one law firm in Huntsville lists "class action litigation" as a practice area. Steven D. King, an attorney from Blount County, which is between Huntsville and Birmingham, lists "class action litigation" and "consumer credit" as part of his practice.

Stewart's claim that no attorneys in the entire Northern District of Alabama list the FDCPA as an area of practice is

9

accurate. That fact is not dispositive, however, because *West's Legal Directory* only mentions two attorneys <u>in the entire State of Alabama</u> who list <u>Title VII</u> litigation as a specific area of practice. This court's caseload with respect to that federal statute ensures that countless attorneys deal in Title VII litigation. This court is not persuaded that attorneys in the relevant market area cannot handle a class action claim under the FDCPA.[11] Had plaintiff submitted the affidavit of an independent attorney to verify her argument, as the defendants did in submitting Royer's affidavit, this court would have been more willing to entertain her claim for non-local rates with respect to Bragg and Benjamin.

It is a distinct possibility that no attorney in the Northern District of Alabama, or the entire State of Alabama for that matter, possesses the experience and expertise of Bragg when it comes to litigating claims under the FDCPA. According to the Eleventh Circuit in *Barnes*, however, "[a] prevailing plaintiff is not entitled to have the losing party pay for an attorney with the

---

[11] In *Lattimore v. Oman Construction*, 714 F. Supp. 1178 (N.D. Ala. 1988), aff'd, 868 F.2d 437 (11th Cir. 1989), Judge Clemon noted that, for an action filed in the Southern Division of the Northern District of Alabama, "[t]he relevant market for legal services is the Northern District of Alabama, consisting of the thirty-one northernmost counties of the state." *Id.* at 1179. This court takes judicial notice of the fact that a number of attorneys within the Northern District of Alabama specify consumer law, consumer protection, or consumer credit as an area of practice, according to *West's Legal Directory*.

most expertise on a given legal issue, regardless of price, but only for one with reasonable expertise at the market rate." *Barnes*, 168 F.3d at 437 (emphasis supplied).

In sum, plaintiff has failed to meet her burden of showing that no local attorney was ready, willing, and capable of handling her FDCPA class action.[12] Accordingly, Bragg's reasonable rate will be reduced from $275 an hour to $185 an hour, as specified in Royer's affidavit, and Benjamin's reasonable rate will be reduced from $150 an hour to $110 an hour, which is a rate that comports with his level of experience as compared to Stewart.[13]

Plaintiff's failure to satisfy this burden also results in a reduction of "travel time" by Bragg. In *Dillard v. City of Foley*, 995 F. Supp. 1358 (M.D. Ala. 1998), Chief Judge Thompson followed two circuit courts in holding that reduction of travel time for non-local counsel is appropriate "where the case could have been litigated ably by local counsel." *Id.* at 1370 (citing *Smith v. Freeman*, 921 F.2d 1120, 1122 (10th Cir. 1990); *McDonald v.*

---

[12] Stewart's statement that he "consulted Richard Rubin, an experienced FDCPA practitioner," who recommended no co-counsel from Alabama, does not meet the "satisfactory evidence" standard articulated by the Eleventh Circuit in *Norman*, 836 F.2d at 1299. (Reply brief in support of plaintiff's motion for an award of costs and attorney fees, Appendix "A," at ¶ 4.)

[13] Stewart is in his fifth year of practice, while Benjamin is in his second year of practice. (*See* Plaintiff's motion for an award of costs and attorney fees, Appendix "A," at ¶ 5, Appendix "B," at ¶ 11.)

11

Armontrout, 860 F.2d 1456, 1462-63 (8th Cir. 1998)). In *Dillard*, Chief Judge Thompson reduced non-local counsel's travel billings by fifty percent, "to account for the fact that the time was unproductive, and that local counsel could have been retained." *Id.* at 1371.

In this case, Bragg billed 7.6 hours in travel time to Huntsville[14] for depositions and 7.3 hours in travel time for his return to Chicago from Huntsville. (*See* Plaintiff's motion for an award of costs and attorney fees, Appendix "B," Exhibit "A" at 3-4.) This court follows Chief Judge Thompson's logic and reduces Bragg's total billings by 7.3 hours, which is nearly half of his entire travel time.[15] Again, this reduction is warranted since plaintiff failed to put forth satisfactory evidence showing that her action could not be handled by local counsel. The reasonableness of Bragg's remaining hours, as well as the hours spent by Stewart and Benjamin, is discussed below.

---

[14] Bragg's time records indicate he "review[ed plaintiff's] file for deposition during trip [to Huntsville]." (Plaintiff's motion for an award of costs and attorney fees, Appendix "B," Exhibit "A" at 4.)

[15] Bragg claims travel expenses in the amount of $1,028.40, as part of plaintiff's claim for costs. (*See* Plaintiff's motion for an award of costs and attorney fees, Appendix "B," Exhibit "D.") Consistent with the court's analysis *supra*, this amount will be reduced by fifty percent, to $514.20. Plaintiff's total cost recovery will reflect this reduction. *See infra* page 16.

12

**B. Reasonableness of Hours Expended by Stewart, Bragg, and Benjamin**

All three attorneys representing plaintiff have satisfied their burden of "establishing entitlement and documenting the appropriate hours and hourly rates." *Norman*, 836 F.2d at 1303. The appendices submitted with plaintiff's motion demonstrate that these attorneys "maintained records to show time spent on the different claims" and set out "the general subject matter of the time expenditures" with sufficient particularity. *Id.*

Defendants, on the other hand, failed to satisfy their burden of articulating specific and "reasonably precise" objections to the time records introduced by plaintiff's counsel. *Norman*, 836 F.2d at 1301. Defendants have made no efforts similar to the efforts made by the defendants in *Barnes*:

> The defendants in this case have discharged that obligation well. <u>In the district court and in this Court, they have carefully analyzed the billing records and done what the fee application itself should have done, which is to calculate the number of hours billed for completing each of the various litigation tasks</u>: drafting the complaint, drafting the briefs, preparing for and attending the status conference, and preparing for and attending the Internet demonstration. <u>Defendants have put forward specific arguments designed to show that many of the hours submitted by the plaintiffs in connection with a given task indicate a lack of proper billing judgment</u>.

*Barnes*, 168 F.3d at 428 (emphasis supplied). Instead, defendants

13

in this case question the hours expended by Bragg and Stewart in conclusory fashion.[16]

With respect to Bragg, defendants contend "there are specific instances of time expended on particular activities that appear as though the present case was either a case of first impression or was extremely complicated." (Defendants' objection to plaintiff's motion for an award of costs and attorney fees, at 5.) Defendants do not elaborate on these "specific instances," however. In regard to Stewart, defendants argue: "This fact leaves defendants with questions such as: was it even necessary to associate O. Randolph Bragg in this matter other than to gain a greater lodestar attorney fee to divide; was the time for research and pleading preparation necessary; and did Ms. Golden require significant preparation?" (*Id.* at 8.) Again, defendants do not elaborate on these questions with respect to specific portions of Stewart's billing records.

This court has reviewed the billing records of all three attorneys, and is unable to pinpoint any entries where they failed

---

[16] Defendants do specifically point to 8.3 hours of unnecessary travel time cataloged by Stewart. (*See* Defendants' objection to plaintiff's motion for an award of costs and attorney fees, at 7-8.) Stewart did not include these hours in the motion for attorney fees, however. (*See* Plaintiff's motion for an award of costs and attorney fees, Appendix "A," at ¶ 7 ("Plaintiff does not seek an award of attorney fees for 8.3 hours of my time expended on October 8, 1998, October 16, 1998, November 13, 1998 and December 15, 1998.").)

14

NOV-03-1999 14:53   USDC HUNTSVILLE                  256 551 0741      P.16
Case 5:98-cv-02565-CLS   Document 41   Filed 11/03/99   Page 15 of 16

to exercise billing judgment.[17] *See Norman*, 836 F.2d at 1301 (fee applicants must exclude "excessive, redundant, or unnecessary" hours that would be unreasonable to bill irrespective of an attorney's skill, reputation, or experience) (quoting *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939-40). The court is aware of the fact that plaintiff's class was certified within the same order that the joint settlement was approved. Nonetheless, plaintiff's counsel's preparation in certifying a class as of the time the complaint was filed is not questioned by defendants.

Finally, defendants' argument that the hours of plaintiff's counsel should be reduced based on the size of the actual recovery in this case must be rejected. It is well-established that Congress intended fee payouts in FDCPA cases to be "commensurate with those which [attorneys] could obtain by taking other types of cases." *Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995) (noting that Congress chose a "private attorney general" approach in enforcing the FDCPA). Under this analysis, the amount of recovery by plaintiffs in FDCPA has no bearing on the amount of attorneys' fees they may recoup. *See id.* at 653 ("Paying counsel in FDCPA cases at rates lower than those they can obtain in the

---

[17] The court addressed Bragg's billings for travel time *supra*, at pages 11-12.

15

marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law."); *see also Student Public Interest Research Group v. AT & T Bell Laboratories*, 842 F.2d 1436, 1449 (fee shifting crucial in civil rights, consumer protection, and environmental protection cases, because it increases the "likelihood that the congressional policy of redressing public interest claims will be vindicated").

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion is due to be granted in part and denied in part. Plaintiff is entitled to collect costs in the amount of $1,660.74 from defendants. Further, plaintiff is entitled to collect attorneys' fees in the amount of $16,811.25 from defendants. The fees are itemized below:

| Attorney | Rate | Hours | Total Fee |
|---|---|---|---|
| Stewart | $135/hr. | 44.35 | $5,987.25 |
| Bragg | $185/hr. | 50.6 | $9,361.00 |
| Benjamin | $110/hr. | 13.3 | $1,463.00 |

An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this the 3rd day of November, 1999.

United States District Judge

16